**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DEBORAH HEATH,                    No   C-05-0719 VRW

12          Plaintiff,                 ORDER

13

14          v

15   AT&T CORP,

16          Defendant.

17   _____/

18

19          Plaintiff Deborah Heath (Heath) sues defendant AT&T

20   Corporation (AT&T) for claims stemming from the termination of her

21   employment with AT&T.  Administrative Record (AR), Ex A (Compl).

22   AT&T moves to dismiss Heath's complaint pursuant to FRCP 12(b)(6).

23   Mot Dismiss (Doc #7).  Heath opposes and seeks leave to amend her

24   complaint to name her former AT&T supervisor, Tracy Rohm (Rohm), as

25   a defendant.  Pl Opp (Doc #24); Pl Decl in Support of Opp (Doc

26   #25).  Based on the parties' memoranda and the applicable law, the

27   court GRANTS IN PART AT&T's motion to dismiss and DENIES Heath's

28   request for leave to amend.

United States District Court

For the Northern District of California

I

The following facts are taken from Heath's complaint and are presumed true for purposes of this motion.  See <u>Wyler Summit Partnership v Turner Broadcasting Systems, Inc</u>, 135 F3d 658, 661 (9th Cir 1998) ("On a [Rule 12(b)(6)] motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." (citation omitted)).

In 1984, Heath entered into a "partly oral, partly written, implied-in-fact and implied-in-law contract" with AT&T. Compl at 9, ¶ 39.  The employment contract provided that (1) Heath's employment would be secure as long as her performance was "satisfactory"; (2) Heath "would not be terminated without good cause"; (3) Heath's employment would be "free from disability based discrimination and/or disability harassment" and (4) Heath "would earn agreed upon wages and fringe benefits."  Id.

In November 1994, due to injuries sustained during her employment, AT&T placed Heath on paid disability leave.  Id at 3, ¶ 11.  Heath remained on paid disability leave until March 2002.  Id at 5, ¶ 23.  On March 4, 2002, AT&T representatives sent Heath's treating physician, Dr Roger Drainer, a questionnaire inquiring whether Heath could perform the work-related activities laid out in a "New Highly Modified Job Duties description as a Senior Operations Clerk."  Id.  Drainer indicated that Heath could perform the the new job.  Id.

AT&T representatives subsequently contacted Heath and informed her that there was a "position at AT&T within [her]

//

restrictions," and that she needed to "report to work on Monday, April 1st, [2002]."  Id at 6, ¶¶ 24, 25.

On April 1, 2002, Heath reported to work and met with her "second level" supervisor, Rohm.  Id at 6, ¶ 26.  Heath informed Rohm that she was "ready to work" and "requested a copy of [the] New Highly Modified Job Duties [she] would be performing."  Id at 7, ¶ 27.  But Rohm "refused to comply with the [Heath's] request" and informed Heath that she and Rohm were going to have a "short meeting" with Cathy Crawford, Heath's "first level supervisor."  Id at 7, ¶ 28.

Rohm made small talk with Heath, asking her "general questions both job related and non-job related" and then informed plaintiff that "she was terminating [her] for fraud."  Id. Specifically, Rohm informed Heath that "she had concrete proof that [Heath] could do all the things [she] said [she] couldn't do and that if [Heath] pursued filing a Union Grievance or Hire[d] an attorney [Rohm] would prosecute [Heath] and send [her] to jail." Id at 7, ¶ 29.  Heath reiterated to Rohm that she "was ready to work" and "was not refusing to perform any work," and she again requested a copy of the "New Highly Modified Job Duties."  Id at 7, ¶ 30.  In response, Rohm stated that "[n]one of that matters," and reiterated that she was "terminating [Heath] for fraud."  Id.

The following facts are taken from documents attached to AT&T's motion to dismiss.  See Parrino v FHP, Inc, 146 F3d 699, 706 (9th Cir 1998) ("[T]he defendant may attach [documents crucial to the plaintiff's claims] to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to [them].").
//

On May 23, 2002, Heath filed a grievance with her union, CWA Local 9415, for unjust termination in violation of contract provisions "9, 12, 13 [and] any and all others that may apply." AR, Ex B.  Heath sought "[r]einstate[ment] with full back pay, benefits, remov[al] [of] any warning or documentation from [her] file and [to] make whole again in every way."  Id.

On November 13, 2002, Heath filed a complaint against AT&T with the California Department of Fair Employment and Housing (DFEH) alleging employment discrimination based on disability.  AR, Ex 1.  Heath subsequently received a United States Equal Employment Opportunity Commission (EEOC) "Notice of Charge Filed," stating that the Department of Fair Employment and Housing (DFEH) had filed Heath's complaint with the EEOC and that the DFEH would process Heath's complaint of employment discrimination.  AR, Ex 2.

In a letter dated April 15, 2003, the DFEH informed Heath that she could request a right-to-sue notice, and that if she decided to do so, she was required, inter alia, to "file [her] lawsuit within one year from receipt of the right-to-sue notice." Doc #25, Ex C.  On November 16, 2003, Heath received a right-to-sue notice from the DFEH pursuant to Cal Gov Code § 12965.  AR, Ex 3; Doc #24 at 2, ¶ 1.  The right-to-sue notice stated that Heath may bring a civil action "under the provisions of [FEHA] against the person, employer, labor organization or employment agency named in the above-referenced complaint within one year from the date of this notice."  AR, Ex 3.  Heath's right-to-sue notice was dated November 10, 2003.  Id.

The DFEH subsequently sent Heath a "Notice of Case Closure," dated November 12, 2003, which stated that the DFEH

closed Heath's case based on "No Probable Cause To Prove A
Violation Of The Statute."  AR, Ex 4.  The notice also stated that
"[a] Right-To-Sue Notice (DFEH-200-42) was issued on November 10,
2003," and that if Heath decided to bring a civil action under FEHA
[the California Fair Employment and Housing Act], the action must
be filed "within one year from the date of the Right-To-Sue
Notice."  Id.

       According to Heath, on November 10, 2004, Heath's husband
called the Alameda County superior court and "was advised by the
clerks [sic] office, that a proof of a United States Postal
Service, Certified, Return Requested Mailing Date, was an
acceptable form of evidence, to identify a Plaintiff's Complaint
filing Date in their venue."  Doc #24 at 3:15-18.  On that same
date, plaintiff mailed her complaint to the Alameda County superior
court.  Id at 3:20-24; Doc #25, Ex F.  On November 15, 2004,
Heath's complaint was received and filed by the Alameda County
superior court.  Doc #24 at 2:15-18; Doc #25, Ex H.

       Heath's complaint alleges five causes of action against
AT&T: (1) "Employment Disability Discrimination"; (2)
"Retaliation"; (3) "Breach of Implied-in-Fact Contract of
Employment Wrongful Termination"; (4) Wrongful Termination in
Violation of Public Policy"; and (5) "Breach of the Implied
Covenant of Good Faith and Fair Dealing."  Compl at 1.  Heath
contends, inter alia, that she was denied promotions and bonus
opportunities, and was terminated because of her disability.  Compl
at 8.

       In addition, while Heath does not plead harassment as a
separate cause of action, she includes allegations of harassment in

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

her complaint (Compl at 7, ¶ 31, 33) and AT&T addresses this claim in its motion to dismiss.  Mot Dismiss at 8 ("Plaintiff also includes allegations of harassment, although they are not pled as a separate cause of action.").  Accordingly, the court will liberally construe Heath's complaint to allege workplace harassment.  See United States v Ten Thousand Dollars ($ 10,000) in United States Currency, 860 F2d 1511, 1513 (9th Cir 1988) ("We have consistently held in this circuit that courts should liberally construe the pleadings and efforts of pro se litigants * * *.") (quoting Garaux v Pulley, 739 F2d 437, 439 (9th Cir 1984)).

On February 17, 2005, AT&T removed this case on the basis of diversity jurisdiction and the case was assigned to Magistrate Judge Bernard Zimmerman.  Doc #1.  On February 22, 2005, AT&T declined to proceed before Magistrate Judge Zimmerman (Doc #4) and the case was reassigned to the undersigned.  Doc #5.  AT&T moves to dismiss Heath's complaint pursuant to FRCP 12(b)(6).  Doc #7 at 2.  Specifically, AT&T contends that Heath's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are preempted under § 301 of the Labor Management Relations Act (LMRA), 29 USC § 185(a).  Id at 4-6.  Further, AT&T contends that Heath's claims for wrongful termination in violation of public policy, employment discrimination, harrassment and retaliation are barred by the applicable California statutes of limitations.  Id at 6-9.  Heath filed a scattershot and sometimes unintelligible opposition which the court has construed as liberally as possible.
//
//
//

6

**II**

**A**

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." <u>Scheid v Fanny Farmer Candy Shops, Inc</u>, 859 F2d 434, 436 (6th Cir 1988). Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations." <u>Swierkiewicz v Sorema NA</u>, 534 US 506, 515 (2002) (rejecting heightened pleading standards); <u>Schmier v United States Court of Appeals for the Ninth Circuit</u>, 279 F3d 817, 820 (9th Cir 2002) (rejecting conclusory allegations).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief." <u>Hughes v Rowe</u>, 449 US 5, 9 (1980) (citing <u>Haines v Kerner</u>, 404 US 519, 520 (1972)); see also <u>Conley v Gibson</u>, 355 US 41 at 45-46 (1957). All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff. See <u>In re Silicon Graphics Inc Sec Lit</u>, 183 F3d 970, 980 n 10 (9th Cir 1999). But "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v Golden State Warriors</u>, 266 F3d 979, 988 (9th Cir 2001) (citing <u>Clegg v Cult Awareness Network</u>, 18 F3d 752, 754-55 (9th Cir 1994)).

//

//

//

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**B**

2          Federal courts sitting in diversity are required to apply

3    state statutory and common law.  **Erie Railroad Co v Tompkins**, 304

4    US 64 (1938).  It is clear that California law applies to the

5    present case and the parties do not argue otherwise.  See **Fonteno v**

6    **Equitable Real Estate Investment Management, Inc**, 1995 WL 125493,

7    *3 (ND Cal 1995) (Patel, J) ("California substantive law governs

8    claims brought pursuant to the FEHA.").  Under the **Erie** doctrine,

9    "this court is bound by the pronouncements of the California

10   Supreme Court * * * and if the California Supreme Court has not

11   spoken directly to the issue, then [this court must] look to

12   California Courts of Appeal decisions as data for determining how

13   the highest California Court would rule."  **Scandinavian Airlines**

14   **System v United Aircraft Corp**, 601 F2d 425, 427 (9th Cir 1979).

15          If a claim is barred by the applicable state statute of

16   limitations, dismissal pursuant to FRCP 12(b)(6) is appropriate.

17   **Morales v City of Los Angeles**, 214 F3d 1151, 1153 (9th Cir 2000).

18   "A motion to dismiss based on the running of the statute of

19   limitations period may be granted only if the assertions of the

20   complaint, read with the required liberality, would not permit the

21   plaintiff to prove that the statute was tolled."  **Supermail Cargo,**

22   **Inc v United States**, 68 F3d 1204, 1206 (9th Cir 1995) (citation and

23   internal quotation marks omitted).  "In fact, a complaint cannot be

24   dismissed unless it appears beyond doubt that the plaintiff can

25   prove no set of facts that would establish the timeliness of the

26   claim."  Id at 1207.

27   //

28   //

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III

*Contract Claims*

Section 301 of the LMRA provides exclusive federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 USC § 185(a); see <u>Young v Anthony's Fish Grottos, Inc</u>, 830 F2d 993, 997 (9th Cir 1987) ("[A] suit for breach of collective bargaining agreement is governed exclusively by federal law under section 301.") (citing <u>Franchise Tax Board of the State of California v Construction Laborers Vacation Trust for Southern California</u>, 463 US 1, 23 (1983)). Accordingly, § 301 of the LMRA preempts state law claims premised on rights created by a collective bargaining agreement (CBA) as well as claims that are substantially dependent on the interpretation of a CBA. <u>Aguilera v Pirelli Armstrong Tire Corp</u>, 223 F3d 1010, 1014 (9th Cir 2000).

In other words, preemption is required if the state law claim can be resolved only by referring to the terms of a CBA. <u>Newberry v Pacific Racing Ass'n</u>, 854 F2d 1142, 1146 (9th Cir 1988); <u>Walton v UTV of San Francisco, Inc</u>, 776 F Supp 1399, 1402 (ND Cal 1991) (Walker, J) ("[I]nterpretation of a CBA must be required in a state cause of action for that action to be preempted by § 301."). "Even suits based on torts, rather than on breach of [a CBA], are governed by federal law if their evaluation 'is inextricably intertwined with consideration of the terms of [a] labor contract.'" <u>Miller v AT&T Network Systems</u>, 850 F2d 543, 545 (9th Cir 1988) (quoting <u>Allis-Chalmers Corp v Lueck</u>, 471 US 202, 213 (1985)).

//

United States District Court

For the Northern District of California

Heath's complaint does not make reference to a CBA between her union and AT&T. Her complaint simply alleges breach of a "partly oral, partly written, implied-in-fact and implied-in-law" contract. Compl at 9, ¶ 39. This fact is of no moment, however, as "it is not dispositive that a complaint is framed without reference to a CBA." Kirton v Summit Medical Center, 982 F Supp 1381, 1385 (ND Cal 1997) (James, MJ) (citing Allis-Chalmers, 471 US at 210-11). Indeed, this court has made clear that "[b]y careful pleading, a plaintiff cannot avoid federal preemption." Busey v P W Supermarkets, Inc, 368 F Supp 2d 1045, 1054 (ND Cal 2005) (Ware, J). See Fong v University of San Francisco, 1993 WL 106893, *1 (ND Cal 1993) (Lynch, J) ("[A] plaintiff may not avoid removal by artful pleading when her claims are actually preempted by § 301.") (citations omitted)).

Heath appears to be one of the artful pleaders mentioned above. Heath's union, the Communications Workers of America, has a CBA with AT&T; indeed, Heath has already filed a grievance complaint with her union for "unjust termination," thus taking advantage of the CBA's grievance procedures. See AR, Ex A, B. Heath's grievance refers nebulously to provisions "9, 12, 13 any and all others that may apply," and seeks the remedy of "[r]einstate[ment] with full back pay, benefits, remov[al] [of] any warning or documentation from [her] file and [to] make [her] whole again in every way." AR, Ex B. Provision nine of the CBA is the CBA's grievance procedure. AR, Ex A. Thus, it is evident that the CBA forms the basis for Heath's grievance with the union.

Heath does not (1) dispute the existence of the CBA between her union and AT&T or (2) contend that the "contract"

United States District Court

For the Northern District of California

referenced in her complaint is independent of the CBA.  In fact, Heath's opposition does not mention the CBA, despite AT&T's hefty reliance on it in arguing for preemption.  Heath's opposition contains one statement regarding § 301 preemption:  "Plaintiff (is not) barred or preempted under section 301 of the Labor Relations Act, by filing a claim of disability discrimination and retaliation against [AT&T], solely because plaintiff was a union member."  Doc #24 at 1, ¶ 2.  This statement, however, is fruitless; AT&T does not claim that Heath's discrimination and retaliation claims are preempted under § 301.

For all intents and purposes, Heath's contract claims are a § 301 claim for breach of the CBA between her union and AT&T and are therefore subject to preemption and recharacterization.  See Busey, 368 F Supp 2d at 1054 ("Where a relationship is otherwise governed by a collective bargaining agreement, state law theories of breach of contract and implied covenant of good faith and fair dealing are preempted, and subject to recharacterization as [§] 301 claim for breach of contract.") (citing Fristoe v Reynolds Metals Co, 615 F2d 1209, 1212 (9th Cir 1980)); see also Price v Georgia-Pacific Corp, 99 F Supp 2d 1162, 1166 (ND Cal 2000) (Breyer, J) ("[A]n employee in a position with access to a CBA-sanctioned grievance procedure cannot state an individual claim for breach of contract under state law.  Such claim is necessarily preempted by section 301.").

Having recharacterized Heath's claims, the court addresses the validity of the § 301 claim.  The Ninth Circuit has held that a plaintiff "must first exhaust contractual grievance procedures before bringing an action for breach of the collective

11

United States District Court

For the Northern District of California

1  bargaining agreement" under § 301.  **Carr v Pacific Maritime**

2  **Association**, 904 F2d 1313, 1317 (9th Cir 1990) (citing **Clayton v**

3  **United Auto Workers**, 451 US 679, 686 (1981)).  It is clear that

4  Heath has not exhausted the CBA's grievance procedures; indeed, she

5  is still waiting for the arbitrator's ruling on her grievance.  Mot

6  Dismiss at 3:8-12.  Accordingly, "[b]ecause plaintiff alleges

7  neither exhaustion of [her] grievance and arbitration remedy, nor

8  breach by her union of its representation duty, to the extent that

9  plaintiff's wrongful termination and breach of the covenant of good

10  faith and fair dealing causes of action are recharacterized as

11  section 301 claims, they must be dismissed."  **Busey**, 368 F Supp 2d

12  at 1054-55.

13      The court GRANTS AT&T's motion to dismiss Heath's claims

14  for breach of contract and breach of the implied covenant of good

15  faith and fair dealing.

16

17                                IV

18           *Wrongful Termination in Violation of Public Policy*

19

20                                A

21      "A claim that a discharge violates public policy 'is

22  preempted * * * if it is not based on any genuine state public

23  policy, or if it is bound up with interpretation of the collective

24  bargaining agreement and furthers no state policy independent of

25  the employment relationship.'"  **Jackson v Southern California Gas**

26  **Co**, 881 F2d 638, 643-44 (9th Cir 1989) (quoting **Young v Anthony's**

27  **Fish Grottos, Inc**, 830 F2d 993 (9th Cir 1987)).  But a claim of

28  wrongful discharge in violation of public policy is not preempted

United States District Court

For the Northern District of California

1    if it "poses no significant threat to the collective bargaining

2    process and furthers a state interest in protecting the public

3    transcending the employment relationship." Young, 830 F2d at 1001.

4         California has clearly adopted a public policy against

5    workplace disability discrimination.  Cal Gov Code § 12920.

6    Because Heath's claim for wrongful termination in violation of

7    public policy is based on a genuine state public policy of

8    preventing disability discrimination and poses no significant

9    threat to the collective bargaining process, it is not preempted.

10

11                                   B

12        Heath's claim for wrongful termination in violation of

13   public policy is subject to a two-year statute of limitations.  Cal

14   Civ Pro § 335.1; see Anderson v American Airlines, Inc, 2005 WL

15   1712040, *4 (ND Cal 2005) (Wilken, J) ("A common law claim for

16   wrongful discharge in violation of public policy is governed by a

17   two-year statute of limitations.") (citing Mathieu v Norrell Corp,

18   115 Cal App 4th 1174, 1189 n 14 (2004)).  Heath's cause of action

19   for wrongful termination in violation of public policy accrued on

20   April 1, 2002, the date of Heath's termination.  Hence, under the

21   applicable two-year statute of limitations, Heath had until April

22   1, 2004, to file her claim.  But Heath did not file her complaint

23   until November 15, 2004.  Thus, Heath's claim for wrongful

24   termination in violation of public policy is time barred under Cal

25   Civ Pro § 335.1.

26        Heath conclusorily states that the doctrine of equitable

27   tolling saves her claim for wrongful termination in violation of

28   public policy.  The court disagrees.  The California Supreme Court

                                   13

United States District Court

For the Northern District of California

has held "that a common law cause of action for discharge in violation of public policy is, in effect, an independent alternative to a FEHA administrative claim and subsequent cause of action under the act." Mathieu, 115 Cal App 4th at 1189 (2004) (citing Rojo v Kliger, 52 Cal 3d 65, 86 (1990) ("[A]lthough an employee must exhaust the administrative remedy made available by the FEHA before bringing a cause of action under the FEHA, exhaustion is not required before filing a civil action for damages alleging nonstatutory tort of wrongful discharge in violation of public policy * * *."). Cf Kang v U Lim American, Inc, 296 F3d 810, 819 (9th Cir 2002). In other words, California law does not "permit[] a plaintiff to delay filing a common law tort action because an alternative administrative process has not yet been completed." Mathieu, 115 Cal App 4th at 1190.

Accordingly, the court GRANTS AT&T's motion to dismiss Heath's claim for wrongful termination in violation of public policy.


V

*FEHA Claims*


A

The Ninth Circuit has consistently held that state discrimination claims brought under FEHA are not preempted by the LMRA. See, e g, Jimeno v Mobil Oil Corp, 66 F3d 1514, 1522-28 (9th Cir 1995) (concluding that the LMRA did not preempt a state law claim for disability discrimination in employment brought under FEHA). In fact, "[i]n every case in which [the Ninth Circuit]

**14**

ha[s] considered an action brought under [FEHA], [the Ninth Circuit] ha[s] held that it is not preempted by section 301." Ramirez v Fox Television Station, 998 F2d 743, 748 (9th Cir 1993).

B

Heath's retaliation, harassment and disability discrimination claims are subject to FEHA's one-year statute of limitations.  Cal Gov Code § 12965(b) ("This [right-to-sue] notice shall indicate that the person claiming to be aggrieved may bring a civil action under this [statute] * * * within one year from the date of that notice.").  Plaintiff's complaint was filed on November 15, 2004.  Accordingly, the court counts back from November 15, 2004, to determine which FEHA claims, if any, are barred by the relevant statute of limitations.

Heath received her right-to-sue notice via the United States Postal Service on November 16, 2003.  But the right-to-sue notice is dated November 10, 2003.  There is a dispute whether the one-year statute of limitations began to run on November 10, 2003, or November 16, 2003.  AT&T's argument is straightforward:  The plain language of Cal Gov Code § 12965(b) requires a claimant to bring suit within one year "from the date of [her right-to-sue] notice," i e, by November 10, 2003.  (emphasis added).  Mot Dismiss at 8-9.  Heath's argument relies on the April 15, 2003, DFEH letter which stated that Heath may "file [her] lawsuit within one year from receipt of the right-to-sue notice," i e, by November 16, 2003.  Doc #24 at 2.  If the statute of limitations began to run on the former date, Heath's FEHA claims are time-barred; if it was the later date, however, Heath's FEHA claims are timely.

Although AT&T's argument is statutorily sound, a number of cases in this court appear to assume that a claimant must file his or her FEHA claims "within one year from their <u>receipt</u> of the right-to-sue notice." <u>Wilton v San Francisco</u>, 1992 US Dist LEXIS 19439, *4 (ND Cal 1992) (Caulfield, J) (emphasis added). See also <u>Deppe v United Airlines</u>, 2002 WL 1897296, *3 (ND Cal 2000) (Breyer, J) ("Plaintiff <u>received</u> his right-to-sue letter from the DFEH on December 2, 1993. Plaintiff had one year from that date to file his FEHA claim.") (emphasis added); <u>Paine v Dept of Mental Health Services of the State of California</u>, 1995 WL 56588, *6 (ND Cal 1995) (Conti, J) ("[Cal Gov Code] § 12965(b) sets forth a one-year statute of limitations for filing a civil action after <u>receipt</u> of a right-to-sue notice from the [DFEH].") (emphasis added). Moreoever, a California appellate court has held that "<u>obtaining</u> a right-to-sue notice is the final necessary step in exhausting one's administrative remedies under the FEHA." <u>Grant v Comp USA, Inc</u>, 109 Cal App 4th 637, 646 (2003) (emphasis added).

The court cannot find a decision that has squarely addressed the question of whether a claimant's FEHA cause of action accrues on the date of the right-to-sue notice or the date the claimant receives the notice. As tempted as the court is to plow new ground in the field of FEHA statute of limitations jurisprudence, the court need not reach this issue, for assuming Heath's cause of action accrued on November 10, 2005, the statute of limitations was equitably tolled.

"A statute of limitations non-compliance may be excused by equitable doctrines such as waiver or tolling." <u>Valenzuela v Kraft, Inc</u>, 801 F2d 1170, 1172 (9th Cir 1986). Regarding

16

**United States District Court**

For the Northern District of California

discrimination actions brought under Title VII, the Supreme Court held that "[t]he doctrine of equitable tolling may be invoked "where the court has led the plaintiff to believe that she had done everything required of her." Baldwin County Welcome Center v Brown, 466 US 147, 151 (1984) (citing Carlile v South Routt School District RE 3-J, 652 F2d 981, 986 (10th Cir 1981) ("Equitable tolling is appropriate when a plaintiff has been "lulled into inaction by her past employer, state or federal agencies, or the courts.")).  No California court appears to have spoken to whether a plaintiff may invoke equitable tolling when she alleges a court clerk misled her as to the requirements for filing her complaint within the statute of limitations.  California courts have, however, stated that while "Title VII [of the Civil Rights Act of 1964 (42 USC § 2000e)] differs in some respects from FEHA, [] "* * * the antidiscriminatory objectives and overriding public policy purposes of the two acts are identical.'  [And] [a]lthough * * * not controlling, federal cases interpreting title VII are instructive when analyzing a FEHA claim." Spaziano v Lucky Stores, Inc, 69 Cal App 4th 106, 112 (1999) (quoting Beyda v City of Los Angeles, 65 Cal App 4th 511, 517 (1998)).

Heath alleges the court clerk informed her "that a proof of a United States Postal Service, Certified, Return Requested Mailing Date, was an acceptable form of evidence, to identify a Plaintiff's Complaint filing Date in their venue." Doc #24 at 3:15-18.  On that same date, Heath mailed her complaint to the Alameda County superior court. Id at 3, Ex F, G.  Heath's actions were undertaken in reliance on representations made by the court

//

17

clerk.  Such reliance by a pro se plaintiff is reasonable under the circumstances.

Moreover, AT&T has alleged no prejudice resulting from the five-day delay due to Heath's reliance on the clerk's representation.  Under California law, "[a] plaintiff whose ignorance of the statutory period is excusable may file a lawsuit outside that period <u>as long as he causes no prejudice to the defendants by doing so</u>."  <u>Guerrero v Gates</u>, 357 F3d 911, 919 (9th Cir 2004) (emphasis added) (citing <u>Lantzy v Centex Homes</u>, 31 Cal 4th 363 (2003) (applying "equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.").  Moreover, California courts instruct that "[i]n order to carry out the purpose of the FEHA to safeguard the employee's right to hold employment without experiencing discrimination, the limitations period set out in the FEHA should be interpreted so as to promote the resolution of potentially meritorious claims on the merits."  <u>Romano v Rockwell International, Inc</u>, 14 Cal 4th 479, 493-94 (1996).

Because the one-year statute of limitations was tolled, Heath's claims for retaliation, harassment, and disability discrimination under FEHA are not barred time-barred.


C

The fact that Heath's FEHA claims are not time-barred does not end the inquiry; the court must still determine whether Heath succeeds in substantially stating a claim upon which relief can be granted.

18

*Retaliation*

Cal Gov Code § 12940(h) provides that "[f]or any employer * * * or person to discharge, expel, or otherwise discriminate against any person because the person has <u>opposed any practices</u> forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (emphasis added). Hence, "[t]o establish a prima facie case of retaliation, [Heath] must show she engaged in a protected activity, she was thereafter subjected to adverse employment action by her employer and there was a causal link between the two." <u>Mathieu</u>, 115 Cal App 4th at 1185.

Heath does not allege that she was discharged for opposing any practices by AT&T that are forbidden by FEHA or for participating in a FEHA proceeding. Heath simply alleges that she was fired because she was disabled. This allegation supports a claim for disability discrimination under FEHA, not a claim for retaliation. Accordingly, the court GRANTS AT&T's motion to dismiss Heath's claim for retaliation.

*Harassment*

Nor does Heath's complaint state a claim for harassment pursuant to Cal Gov Code § 12940. Cal Gov Code § 12940(h)(1) provides that it is an unlawful employment practice "[f]or an employer * * * or any other person, because of * * * physical disability * * * to harass an employee or applicant." "Harassment includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances."

United States District Court

For the Northern District of California

**Janken v FM Hughes Electronics**, 46 Cal App 4th 55, 63 (1996).
Further, "harassment consists of conduct outside the scope of
necessary job performance, conduct presumably engaged in for
personal gratification, because of meanness or bigotry, or for
other personal motives."  Id.  Moreover, "[h]arassment is not
conduct of a type necessary for management of the employer's
business or performance of the supervisory employee's job."  Id.

Heath does not allege that she was subjected to any of
the aforementioned conduct.  Rather, Heath alleges that she was
denied promotions and bonuses, and was terminated because of her
disability.  Such actions are within the realm of properly
delegated personnel management authority.  Hence, this alleged
conduct, which the court assumes to be true and motivated by
Heath's disability, states a claim for disability discrimination,
not harassment.

Accordingly, the court GRANTS AT&T's motion to dismiss
Heath's claim for harassment.

### *Disability Discrimination*

There are two elements to a prima facie disability
discrimination claim under FEHA: "(1) the complainant must satisfy
one of the statutory definitions of 'handicapped' individual and
(2) the employer must have 'discriminated on that basis.'"  Jimeno,
66 F3d at 1520 (quoting Cassita v Community Foods, Inc, 5 Cal 4th
1050 (1993)).  Heath alleges that she is a "handicapped" individual
and that she was terminated because of her disability.  Hence,
Heath states a claim for disability discrimination and AT&T's
//

United States District Court

For the Northern District of California

1  motion to dismiss Heath's claim for disability discrimination is

2  DENIED.

3       As to the claims which have been dismissed, the court

4  must determine whether such dismissal should be with or without

5  prejudice.  While Heath has sought leave to amend to add Rohm, she

6  has not sought leave to amend her claims against AT&T should the

7  court dismiss any or all of these claims.  The Ninth Circuit,

8  however, instructs that "a district court should grant leave to

9  amend even if no request to amend the pleading was made, unless it

10 determines that the pleading could not possibly be cured by the

11 allegation of other facts."  Lopez v Smith, 203 F3d 1122, 1127 (9th

12 Cir 2000).  The court cannot conclude at this preliminary stage

13 that Heath's pleading could not possibly be cured by the allegation

14 of other facts.  Accordingly, the court dismisses all of Heath's

15 claims against AT&T, save her disability discrimination claim,

16 without prejudice.

17

18                              VI

19                        *Motion to Amend*

20       Finally, the court addresses Heath's request for leave to

21 amend to add Rohm as a defendant.  "[A] party may amend the party's

22 pleading * * * by leave of court * * * and leave shall be freely

23 given when justice so requires."  FRCP 15(a).  The Ninth Circuit

24 directs district courts to apply the policy of Rule 15(a) with

25 "extreme liberality."  Morongo Band of Mission Indians v Rose, 893

26 F2d 1074, 1079 (9th Cir 1990) (citing DCD Programs, Ltd v Leighton,

27 833 F2d 183, 186 (9th Cir 1987)).  This liberality, however, is

28 "subject to the qualification that amendment of the complaint [1]

United States District Court

For the Northern District of California

does not cause the opposing party undue prejudice, [2] is not sought in bad faith and [3] does not constitute an exercise in futility." DCD Programs, 833 F2d at 186 (internal citations omitted).

"A proposed amendment to a complaint is 'futile only if no set of facts can be proved under the amendment * * * that would constitute a valid and sufficient claim.'" Fischer v City of Portland, 2003 US Dist LEXIS 25613, *6 (D Ore 2003) (quoting Sweaney v Ada County, Idaho, 119 F3d 1385, 1393 (9th Cir 1997)). "A plaintiff should be afforded an opportunity to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended complaint would be dismissed for failure to state a claim under [FRCP] 12(b)(6)." Id.

It would be futile to allow Heath to amend to add a cause of action against Rohm for either (1) wrongful termination in violation of public policy or (2) disability discrimination. See Frederickson v United Parcel Service, 1999 WL 129534, *5 (ND Cal 1999) (Walker, J) ("[A]n employee may not sue her supervisor individually for wrongful discharge in violation of public policy.") (citing Reno v Baird, 18 Cal 4th 640, 663-64 (1998)); see also Calero v UniSys Corp, 271 F Supp 2d 1172, 1178 (ND Cal 2003) (Patel, J) ("It is now well settled that supervisors may not be held personally liable for discriminatory personnel decisions under [FEHA].") (citing Cal Gov't Code § 12940(a)).

It would not be futile, however, to allow Heath to amend to add claims against Rohm for harassment and retaliation under FEHA. Calero, 271 F Supp at 1178. But because Heath's request for leave to amend fails to meet the one-year statute of limitations

United States District Court

For the Northern District of California

for FEHA causes of action, she "must satisfy the requirements of FRCP 15(c)(3)." Martell v Trilogy Ltd, 872 F2d 322, 324 (9th Cir 1989); see Korn v Royal Caribbean Cruise Line, Inc, 724 F2d 1397, 1399 (9th Cir 1984) ("[FRCP] 15(c) is the only vehicle through which a plaintiff may amend his complaint, after a statute of limitation period has run * * *."). Rule 15(c)(3) requires that: (1) the claim arise out of the "same conduct, transaction or occurrence"; (2) the new defendant, so as not to be prejudiced in defending on the merits, receive "sufficient notice" of the original action within the time provided for by Rule 4(m); and (3) the new defendant must have or should have known the action would have included him or her "but for a mistake concerning [his or her] identity." See G F Co v Pan Ocean Shipping Co, 23 F3d 1498, 1501 (9th Cir 1994). This third condition permits amendment to cure a formal defect such as a misnomer or misidentification. As such, the condition presents an insurmountable hurdle for Heath.

In the present case, Rohm was not misnamed and she cannot be named after the limitation period has expired. See, e g, Pan Ocean, 23 F3d at 1503-04 (1994); Gilmore v State of California, 1995 WL 492625, *3 (ND Cal 1995). While Rohm is mentioned throughout Heath's complaint, Heath made no attempt to identify Rohm as a defendant or otherwise signal her intent to seek redress from Rohm. See Brink v First Credit Resources, 57 F Supp 2d 848, 859 (D Ariz 1999) ("[P]laintiff's failure to add the defendant(s) before the expiration of the statute of limitations cannot be characterized as a 'mistake concerning * * * identity' because the plaintiff was aware of the new party's identity before the statute of limitations had run."). Clearly, Heath could have named Rohm as

a defendant but simply failed to do so and Heath's request for leave to amend makes no attempt to explain this failure.  See Kilkenny v Arco Marine Inc, 800 F2d 853, 857-58 (9th Cir 1986) ("Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party.").

Heath's request for leave to amend her complaint to name Rohm as a defendant is DENIED.

## VII

In sum, the court GRANTS IN PART AT&T's motion to dismiss plaintiff Heath's complaint.  Specifically, Heath's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination in violation of public policy, harassment and retaliation are dismissed without prejudice. AT&T's motion to dismiss Heath's claim for disability discrimination is DENIED.  Heath's request for leave to amend her complaint to name her former AT&T supervisor, Tracy Rohm, as a defendant is DENIED.

//
//
//
//
//
//
//
//
//

24

1          The parties are ORDERED to attend a further case

2   management conference on October 4, 2005, at 9:00 am, or on another

3   such date that the parties may arrange with each other and the

4   court's deputy, Ms Cora Delfin, 415-522-2039.

5

6          SO ORDERED.

7

8   _____

9          VAUGHN R WALKER

10         United States District Chief Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28